# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CC-01269-SCT

*PUBLIC EMPLOYEES' RETIREMENT SYSTEM*

*v.*

*STEVEN T. ROSS*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/20/2001 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARY MARGARET BOWERS |
| ATTORNEY FOR APPELLEE: | WILLIAM OWEN MAYFIELD |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED-10/31/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE McRAE, P.J., EASLEY AND CARLSON, JJ.**

**McRAE, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This is an appeal from an order of the Circuit Court of Hinds County reversing the determination of the Public Employees' Retirement System (PERS) to deny disability benefits to Steven T. Ross, a former employee of the Mississippi Department of Transportation. Finding no reversible error by the circuit court, we affirm its judgment.

## FACTS

¶2. In 1989, Steven T. Ross (Ross) began employment with the Mississippi Department of Transportation (MDOT). He held the position of Equipment Mechanic Master during his last three years. After nine years of total service, he took leave due to progressive medical problems.

¶3. In 1990, he was diagnosed with colon cancer and had the distal portion of his colon and rectum removed. He was treated post-operatively with radiation and chemotherapy and must wear an ostomy bag for the rest of his life. Ross's oncologist, Dr. Alva Bowen Weir, III, later found no remaining evidence of cancer. Ross continued to see Dr. Weir every six months and was released from his care in February 1995.

¶4. Ross has subsequently been followed by Dr. D.L. Harrison of Grenada, Mississippi, whose records,

dating from April of 1997 to April of 1999, indicate that Ross suffers from chronic diarrhea, hypertension, and blindness in one eye.

¶5. The medical records of Dr. Michael Mancino and Michael Whelan, Ph.D., who evaluated Ross in September and October of 1998, respectively, in relation to Ross's Social Security Disability application, confirm Dr. Harrison's reports and indicate that Ross is also obese, suffers from incontinence, clinical depression , and bacterial infections which cause the chronic diarrhea.

¶6. Dr. Mancino's report concludes that Ross's bacterial infections and resulting diarrhea likely resulted from the physical stringency of Ross's employment. Likewise, the medical records of Dr. Whelan confirm that Ross indeed suffers from severe depression, and note that upon their initial meeting, Ross was suffering from a major depressive episode.

¶7. Ross testified that he also suffers occasionally from gout, shingles, dryness of the mouth, dehydration from the diarrhea, and numbness and tingling in his left arm. His medications include Cozaar for hypertension, Celebrex and Acyclovir for shingles, Lomotil for diarrhea, and Paxil for depression.

¶8. The hearing transcript shows that Ross sought consultation with an ostomy nurse, and was provided with alternate types of ostomy bags to address any concerns of leaking and soiling. The evidence shows that he has not continued to follow up with such a nurse or ostomy specialist, however, since soon after the surgery. But he testified that he had been advised that his present bag is state of the art.

¶9. According to Ross's testimony the primary factors affecting his ability to perform his job duties were the incessant struggle with ostomy bag problems, the chronic diarrhea, the incontinence, the resulting soiling of his person and clothing, and the depression. In fact, he stated that he did not think he would get well enough to go back to a job like the MDOT mechanic job. Additionally, he could think of no other job that he could perform in his condition. Although Ross worked for eight years with the ostomy bag, he testified that due to progressive health problems he had reached the point where it was just too much.

¶10. Ross's MDOT supervisor certified that Ross was no longer able to function in his job as a result of his medical problems. Ross testified, however, that if he saw a doctor who could straighten out the colostomy and bowel problems, along with all of the problems pertaining thereto, he thought he might be able to go back to work. But Ross was never offered any other job.

**Issue**

    **I. Is PERS' order denying disability benefits unsupported by substantial evidence and therefore arbitrary and capricious?**

**STANDARD OF REVIEW**

¶11. This Court's review of PERS decisions is limited. We may only determine whether a PERS decision was (1) supported by substantial evidence, (2) arbitrary or capricious, (3) beyond the authority of the Board to make, or (4) violated the applicant's statutory or constitutional rights. *Pub. Employees' Ret. Sys. v. Dishmon*, 797 So. 2d 888, 891 (Miss. 2001). Specifically, this Court may not reweigh the facts of the case or substitute its own judgment for that of the agency which rendered the decision. *Pub. Employees' Ret. Sys. v. Marquez*, 774 So.2d 421, 425 (Miss. 2000). This Court must, however, look at the full record to determine whether the agency's findings were supported by substantial evidence. *Id.* at 427.

## DISCUSSION

¶12. While framed above with the requisite formality, the issue in this case is more forthrightly framed this way: Is an auto mechanic, who must constantly, stoop, lift, bend and squat, who suffers from chronic diarrhea and bacterial infections, resulting incontinence, blindness in one eye, hypertension, clinical depression, who must wear an ostomy bag for the rest of his life, who is certifiably unable to perform his job, and, who has been diagnosed as disabled by three different doctors, disabled under the PERS disability statute? PERS contends that the answer is "no" and that substantial evidence supports its decision. We disagree.

¶13. PERS' findings of fact may not be disturbed on appeal "where sustained by substantial evidence." This Court has defined substantial evidence "as something more than a 'mere scintilla' or suspicion. *Marquez,* 774 So.2d at 425. We have further determined that such evidence is that "which provides an adequate basis of fact from which the fact in issue can be reasonably inferred." *Pub. Employees' Ret. Sys. v. Shurden,* 822 So.2d 258, 263 (Miss. 2002)(citing *Dishmon,* 797 So. 2d at 893). If an administrative agency's decision is not based on substantial evidence, it necessarily follows that its decision is arbitrary and capricious. *Marquez,* 774 So.2d at 430; *see also Shurden,* 822 So.2d at 263 (citing *Marquez,* 774 So.2d at 430)*; Harris v. Canton Separate Pub. Sch. Bd. of Educ.,* 655 So.2d 898 (Miss. 1995).

¶14. An administrative agency's decision "is arbitrary and capricious when it is not done according to reason and judgment, but depending on the will alone." *Miss. State Dep't of Health v. Natchez Cmty. Hosp.,* 743 So.2d 973, 977 (Miss. 1999). Further, "[a]n action is capricious if done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles*." Id.*

¶15. Finally, this Court has also ruled that a PERS decision is arbitrary and capricious where it puts forth no explanation as to controverting evidence "in the face of various medical diagnoses made by various credible doctors."*Marquez,* 774 So.2d at 429.

¶16. The circuit court in this case found that no medical evidence was presented to dispute or contradict the evidence presented by Ross; and therefore, it determined that PERS' decision "cannot be supported by substantial evidence and is arbitrary and capricious." PERS disagrees, contending on appeal that it is not required to put forth contradictory evidence, and "[e]ven though any person would feel sympathetic toward Mr. Ross it does not change the fact that he does not meet the statutory requirements for disability."

¶17. While it is true that PERS is not required to put forth contradictory evidence, it is required to make a nonarbitrary decision as to disability that comports with the statutory definition thereof. To determine medical disability, PERS shall apply the following definition:

> [T]he inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered [by PERS] that is actually offered and is within the same general territorial work area, without material reduction in compensation.

Miss. Code Ann. § 25-11-113 (Supp. 2000).

¶18. The crux of PERS' decision, as indicated in its letter of denial, is that Ross's medical evidence does not

provide sufficient "objective" evidence of Ross's alleged disability. PERS also contends that Ross should have seen specialists, rather than merely his treating physician, and that it is within PERS' discretion "to determine which [medical] documents garner more weight than others." *Byrd v. Pub. Employees' Ret. Sys.,* 774 So.2d 434, 438 (Miss. 2000). PERS also argues that "[t]he medical documentation supports the finding of the PERS Board that at the time Ross quit working, he was capable of performing his work duties." However, the record reveals that none of Ross's medical evidence is contradictory. Indeed, all of the evidence supports the same conclusion - that Ross was no longer capable of performing his duties as an auto mechanic due to his medical problems.

¶19. The records indicate that before Ross left the MDOT, his condition was deteriorating. And later, Ross's MDOT supervisor certified that Ross was unable to continue in his mechanic position. He stated that "all duties will be affected; employee is an equipment mechanic which requires stringent work." Further, no other employment was offered to Ross that would not constitute a material reduction in compensation." In fact, nothing was offered to Ross, period.

¶20. Dr. Harrison, who had been treating Ross for some time, diagnosed Ross as being disabled due to the aggregate effect of his ailments. Dr. Mancio, who examined Ross for the Social Security Administration, found that:

> Given the fact that this gentleman is an auto mechanic, it would be understandable that he would have a difficult time with his ostomy, keeping it on given all the movements that he must do in his job. It would require him to change his bag very often in order that it would not overflow and come apart. This problem with diarrhea and the ostomy bag probably has contributed to his intestinal infection.

¶21. Additionally, Michael Whelan, Ph.D., also an examiner for the Social Security Administration, confirmed Ross's depression disorder and noted that on the day of the examination, Ross was suffering from a major depressive episode. Dr. Whelan found that Ross's depression "is certainly a major limitation."

¶22. While the Social Security Administration found Ross disabled primarily on the basis of depression, a listed impairment, it conducted a full examination of Ross, which shows much consideration of and concurrence with Dr. Harrison's findings and diagnoses. The reports of these several doctors are not contradictory, and PERS points to no contradictions.

¶23. Ross contends on appeal that PERS, in fact, made no findings at all. PERS contends it is not required to do so, but may instead evaluate the sufficiency of the medical records offered to make its decision. First, by virtue of its denial of benefits, PERS contends that Dr. Harrison's medical reports have no merit whatsoever. And second, while it is true that PERS is not required to consider findings of the SSA, it is not required to ignore them either. *Marquez,* 774 So.2d 421. They *may* be taken into account. The issue before this Court, however, is "not whether there was evidence in support of [Ross's] disability, but whether there was substantial evidence to support the findings of [PERS]." *Doyle v. Pub. Employees' Ret. Sys.,* 808 So. 2d 902, 903 (Miss. 2002). PERS made several findings, which it claims to be substantial in terms of its denial. First, PERS found upon review of Ross medical records and the hearing testimony that Ross, in reality, suffers from "embarrassment." Second, although the record reflects Ross has been taking anti-depressant medication, PERS argues that Ross did not seek treatment from a *specialist* for his depression. In other words, Dr. Harrison's treatment seems to be insufficient for PERS, as does the diagnosis of Dr. Whealer, who diagnosed Ross with chronic, severe depression. Finally, as the third and final factor constituting its substantial evidence, PERS cites that the "principal reason [Ross] cannot work is because of

[his] colostomy." Further, PERS contends, since "there are thousands upon thousands of people that live with this condition on a daily basis and . . .do not consider themselves 'disabled'," neither is Ross disabled. Additionally, according to PERS, Ross should have been seeing an ostomy specialist to make sure he was using the best ostomy procedures. Essentially, PERS argues that Ross cannot be permanently disabled, although three doctors, and no other, have found otherwise.

¶24. We hold that PERS' position exemplifies an arbitrary, capricious decision. PERS' decision to deny Ross disability benefits is based only on doubt. PERS is required to make findings; doubt does not constitute a finding. Instead, it constitutes suspicion, a basis upon which the denial of disability benefits is arbitrary and capricious. Again, as this Court has held, a PERS decision is arbitrary and capricious if based on nothing more than a mere scintilla or suspicion. *Marquez,* 774 So.2d at 425.

¶25. The present case is remarkably similar to *Marquez*. It therefore serves as the primary guide in our decision. In *Marquez* we reversed PERS' denial of benefits because PERS ignored the objectivity of objective evidence by concluding it was merely "subjective," and therefore insufficient to support a disability finding. *Id*. at 430. This Court stated that "[i]f medical diagnoses by licensed physicians are to be labeled "subjective" evidence of medical ailments, it is unclear what PERS would consider "objective" evidence. *Id.* at 427.

¶26. Further, *Marquez* found that:

> [There was] recent medical evidence in the record suggesting that Marquez [was] incapable of performing her duties as a school teacher. The fact that Marquez was able to continue teaching over the years while suffering from certain ailments has little bearing on the whether she was able to perform her duties at the time she applied for permanent disability benefits. Her mental health had reached the point of being clinically diagnosed as major depression. . .possibly due to her stressful work environment. . . The fact that she was physically able to continue working for such an extended period of time does not negate the possibility that she was unable to continue working when she left [her job].

*Id*. at 427. The Court concluded that [PERS'] failure to make adequate findings and to explain how it evaluated and balanced certain interests rendered its decision arbitrary and capricious." *Id.* at 430.

¶27. In the present case, PERS found that there "was insufficient objective evidence to support the claim that [Ross'] medical condition [prevented him] from performing his duties" as a mechanic. With no reference to the MDOT report, it is clear that PERS has failed to take seriously, in addition to the medical records, the report made by Ross's supervisor that he is no longer able to work as an auto mechanic due to his medical condition and the required physical stringency of the job. Further, as in *Marquez,* PERS has no controverting evidence in the face of various medical diagnoses made by various credible doctors. Essentially, PERS denies the objective evidence in this case and decides according to its own will or doubt, to deny benefits.

## CONCLUSION

¶28. We conclude, as did this Court in *Marquez*, that "in light of the objective diagnoses made by [the] treating physicians, PERS's conclusion is simply not sustained by the record." *Marquez,* 774 So.2d at 429. Indeed, it exemplifies arbitrary and capricious decision-making.

¶29. Therefore, the circuit court did not err in reversing the PERS decision, and the judgment of the circuit court is affirmed.

¶30. **AFFIRMED**.

**PITTMAN, C.J., SMITH, P.J., WALLER, DIAZ, EASLEY AND CARLSON, JJ., CONCUR. COBB, J., CONCURS IN RESULT ONLY. GRAVES, J., NOT PARTICIPATING.**