IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI
NO. 2022-SA-00383-COA

**CHARLES BRADLEY CARTER**                                        **APPELLANT**

**v.**

**PUBLIC EMPLOYEES' RETIREMENT SYSTEM**                  **APPELLEE**

DATE OF JUDGMENT:              03/29/2022
TRIAL JUDGE:                  HON. JESS H. DICKINSON
COURT FROM WHICH APPEALED:    HINDS COUNTY CIRCUIT COURT,
                              FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:       CHARLES BRADLEY CARTER
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY: AMELIA BARTLETT GAMBLE
NATURE OF THE CASE:           CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:                  AFFIRMED - 05/16/2023
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., LAWRENCE AND EMFINGER, JJ.**

**LAWRENCE, J., FOR THE COURT**:

¶1.    Charles Bradley Carter was a part-time flight paramedic with the University of Mississippi Medical Center (UMMC) from April 1996 through February 2001. When Carter left that employment, he started employment as a full-time police officer with the Ridgeland Police Department. While employed with the Ridgeland Police Department, Carter "bought back" five-and-a-half years of service credit that he previously "cashed out."[1]  Later on, in 2018, Carter requested Public Employee's Retirement System (PERS) to review his

---

[1] Carter was employed with the City of Jackson Police Department before he started work with UMMC. When he left the Jackson Police Department, Carter "cashed out" his time.

retirement account which resulted in PERS removing two-and-a-half years of service credit from the time he accumulated while employed part-time at UMMC. Carter appealed the removal of his service credit to the PERS Executive Director, and the director denied his request to reinstate the service credits. Carter then appealed to the claims committee of the PERS Board of Trustees (Board). The Board upheld the director's decision, and Carter appealed to the circuit court, which affirmed the Board's decision. Carter now appeals from the circuit court's judgment. Finding no error, we affirm the circuit court's judgment affirming the Board's decision.

## PROCEDURAL HISTORY AND FACTS

¶2. Carter was employed with the City of Jackson Police Department for five-and-a-half years. After leaving the employment, Carter "cashed out" his time with the City of Jackson. In April 1996, Carter started employment at the University of Mississippi Medical Center (UMMC) as a part-time flight paramedic until February 2001. After being hired, Carter received and signed "PERS Form 4A, Acknowledgment of Employment in Non-Covered Position." By signing "PERS Form 4A," Carter acknowledged that he was employed in a "non-covered position."[2] Throughout Carter's UMMC employment retirement was deducted from Carter's paycheck, and UMMC made contributions on Carter's behalf to PERS. Despite being part-time, Carter was credited service for each month PERS received any contributions from UMMC.

---

[2] On April 1, 1996, Carter signed Form 4A. Since Carter was part-time, he was considered "non-covered" meaning he was not eligible to participate in the retirement system.

2

¶3. After leaving UMMC, Carter started his employment with the Ridgeland Police Department. While employed with the Ridgeland Police Department, Carter "bought back" the time he previously "cashed out" with the City of Jackson (approximately five-and-a-half years) at a cost of $79,992.12.

¶4. In 2018, Carter inquired about his retirement benefits and requested PERS to perform an audit of his retirement account. On February 7, 2018, Carter received a letter from PERS stating, "A recent audit of his account" resulted in "the removal of 2.50 years of service credit from Fiscal Years 1997 through 2001 due to [his] intermittently working fewer than 80 hours per month while employed by UMMC."

¶5. From February 13, 2018, to October 22, 2019, a series of letters were exchanged among Carter and both PERS Executive Director Ray Higgins and PERS Program Administrator Susan Lyon regarding the removal of Carter's part-time service credit. Both Higgins and Lyon provided the documentation that Carter requested, which included the information PERS used to determine his "creditable service from UMMC."

¶6. Eventually, Carter appealed the removal of his 2.50 "years of service credit" to the PERS Executive Director. On November 13, 2019, Higgins issued a "Final Determination Letter" regarding "the removal of 2.50 years of service credit from [Carter's] PERS membership account and his request for reinstatement of the 2.50 service credit." PERS denied Carter's request to reinstate his service credit and explained,

> [T]he service credit removed from your account was done so in accordance with PERS laws and regulation[s]. Therefore, PERS has no statutory authority to reinstate the service credit and it is my responsibility to operate within that statutory authority.

3

¶7.    On January 18, 2020, Carter appealed to the Board challenging,

> the removal of 2.5 years of service credit accrued between April 1996 and February 2002, while an employee of University of Mississippi Medical Center. Notwithstanding the provisions of Miss. Code Ann. §25-11-109(b) and PERS Board Regulation 36, Appellant will show that PERS erred in removing the service credit, pursuant to the doctrine of equitable estoppel.

On January 26, 2021, the Board held a hearing at which Shirley Sessom, Lyon, and Carter testified.

¶8.    Shirley Sessom, PERS "manager of the service department, survivor disability, and customer services division" was the first to testify. Sessom testified that PERS conducts audits only when an audit is recommended or requested by a member. Otherwise, PERS audits "generally occur" at retirement, that is, when PERS "9A Retirement Application" is issued. She also testified that the June 3, 2016 "Balance Letter" issued to Carter was not an "audited statement." She said the letter informed Carter of his membership account and "any information . . . to give him the total service credits that's on the account at that time." She also emphasized the information reported in the letter was "subject to verification at the time of retirement . . ." Specifically, the "Balance Letter" stated, "The total service credit is subject to verification and/or correction."

¶9.    Sessom also explained the difference between a "non-covered position" and "covered position." She stated a person employed in a "non-covered position" would not be working "the required hours" to participate in the State retirement. She stated a person employed in a "covered position" would be working the required "20 hours a week or 80 hours a month, at minimum." Sessom said Carter was employed in a "non-covered position" while at

4

UMMC because he did not work the required hours.[3] Sessom also testified that Carter's 2.50 years of service credit should not be reinstated because he did not meet PERS Regulation 36 or Mississippi Code Annotated section 25-11-109(2)(b) (Rev. 2017) criteria which require an employee to work 20 hours a week or 80 hours a month to receive the service credit benefit. During redirect examination, Sessom also testified that Carter would receive a refund for the 2.50 years of service credit.[4]

¶10.   Lyon also testified at the hearing. Lyon testified that Sessom was her supervisor at the time of Carter's claim. Lyon stated that she "supervised the benefits analysts who prepared the estimates and do audits of accounts." She testified as to the February 13, 2018 letter she received from Carter in response to the letter "explaining that two-and-a-half years of service credit had been removed from his account." She explained that Carter requested the documentation that was used to determine PERS' decision to remove the service credits, and she provided the information.[5] Lyon also stated that she created an Excel spreadsheet to show Carter "the way we had calculated which months were more than 80 hours at that rate of pay, and how we would calculate the service credit based on the number of creditable

_____

[3] Sessom also clarified PERS' position as to Carter's employment with UMMC. Sessom explained that Carter was employed in a "non-covered position" for the 5.50 years he worked with UMMC. She stated that Carter was "awarded and allowed to keep the three years because he worked in excess of 80 hours."

[4] Sessom also testified that under a "strict view of the statute and regulation," none of the 5.50 years should count because Carter was employed in a "non-covered position." She said the employer and employee contributions should be returned to UMMC and Carter. In the end, PERS was "lenient" and did allow three years but only excluded 2.50 years.

[5] PERS' conclusion to remove the 2.50 years of service credit was based on the information reported from UMMC that included Carter's hourly rate as a flight paramedic.

5

months in each fiscal year." Lyon also explained that Carter received member statements every year for 20 years, but those statements were "based on unaudited information and that [PERS is] obligated to correct errors when we find them." Lyon also testified that PERS is statutorily mandated to correct errors upon discovering them; therefore, PERS had to remove the 2.50 service credits. Lyon said PERS does not have "any flexibility" to "award service credit when an employee is working in a noncovered position and not meeting the requirements of Regulation 36 and Mississippi Code Annotated 25-11-109." She also stated that Carter should not be allowed to keep any of the five-and-half years of service credits that he received while working in a non-covered position at UMMC because he signed a "Form 4A," and UMMC did not file a "Form 1" to change his position.[6]

¶11. Carter was the last witness to testify. Carter testified that before his employment with UMMC and the Ridgeland Police Department, he worked for the City of Jackson Police Department for approximately 5.50 years. He stated he "cashed out" his time with the Jackson Police Department when he left that employment. He explained that he "rejoined PERS" in 1996 when he was "an employee at University Medical Center, as . . . part-time paramedic on AirCare."[7] Carter testified that his hours "varied widely" and were "subject to recall." He explained that "if there was a sick paramedic or if I needed to make a fixed-

_____

[6] Lyon also testified that UMMC reported Carter's hours as "they would report a covered employee." She explained that UMMC reported his "wages every month, even when there were fewer than 80 hours . . . and contributions were reported, as well."

[7] Carter said he was hired "as a permanent employee part-time." Carter explained that "as far as" he knew and "UM[M]C knew, [he] was in a covered position because they took money out of my account for every hour that I worked and sent it to PERS, and they sent UM[M]C's contribution, as well."

6

wing flight, I would be called in." He said he "did not pay too much attention to his statements [or] . . . check stubs because I had no idea that I would one day retire from the state retirement system." Carter also testified that he left UMMC in 2001 and went to work with the Ridgeland Police Department. He said, "[T]hen 10 years later, lo and behold, I had over 15 years in the state retirement system. I thought, well, there's a real possibility I could retire from state employment."

¶12. Carter also testified that he considered "buying back the Jackson PD time" based on "buyback calculations in 2000 and 2006." Carter explained, "Finally, in 2015 . . . I sought some advice and said, yeah, is it worth it to you to pay this money to be able to retire five-and-a-half years earlier." He said:

> I concluded that, even though the cost to buy back that time was nearly $80,000, so I - - because I considered the information that UM[M]C provided to me to be reliable . . . and the fact that all these statements said are subject to audit, I had faith that UM[M]C's records were good. I had faith that PERS's records were good, that the information that had been sent to me was reliable, because I knew that I had worked those hours, and I knew that I had made those contributions. So I bought back that time at - - from Jackson PD in 2015 or 2016.

Carter explained that the "buy back" included "nine transactions from one mutual fund provider." Carter said the money was from personal IRAs that he had been depositing money to since 1990. Carter also testified that he "made contact with numerous of analysts during the [buy back] time and got numerous printouts of my service time." He explained there were "probably . . . 10 occasions when I met with analysts and they were in my account, and there was no - - no suggestion that there was any problem until one nice lady, in 2018, . . . said we need to see about getting an audit done. She saw something that where she felt there

was an audit required." He explained that his retirement plan, as of June 2016, was to retire with twenty-five years. He explained that retirement

> was a very real possibility, given my age, that with the buyback, I could take my time that I had earned before at UM[M]C, I could buy back the five-and-a-half years, I could take my time with Ridgeland, and there was a real possibility that I could retire before I was too old with 25 years.

He said this belief triggered the visit to PERS, which ultimately prompted the February 2018 audit and removal of the 2.50 service credits.

¶13. During direct examination, Carter was asked if he "would have bought back those five-and-a-half years if [he] had known that [he was] going to lose two-and-a-half years." Carter responded:

> It certainly would have affected -- it would have affected where I was in the system, so it would have entered into my decision-making.· I don't know if my decision would have changed, but it certainly would have affected my decision-making, and it happening after the fact certainly is a -- is a real problem.[8]

¶14. On February 23, 2021, the Board entered an order "adopting" the "Recommendation of the Claims Committee" to affirm the decision of the PERS Executive Director in "disallowing the 2.5 years of credit." The Board stated the order would serve as the final determination and decision as to Carter's claim. The Order contained the following language:

> [t]he Recommendation of the Claims Committee is approved and adopted; that the proposed Findings of Fact and Conclusions of Law therein set out are

---

[8] Carter also testified that according to his most recent PERS statement, "the 2020 statement, reflected 23 years as of June 30, 2020, plus a year-and-a-half of accumulated leave, plus the subsequent six months since this was sent out." He stated that "I guess, at this moment, I have 25 years on the dot . . . with the two-and-a-half years taken away."

8

adopted as the findings of fact and conclusions of law of this Board; and that Mr. Carter's request that the Public Employees' Retirement System of Mississippi restore 2.5 years of service credit, is hereby denied.

¶15. Carter appealed from the Board's order to the Hinds County Circuit Court on March 21, 2021. The circuit court entered a final judgment affirming the Board's decision on March 29, 2022. From that judgment, Carter now appeals. On appeal, Carter raises one issue: whether the doctrine of equitable estoppel prohibits PERS from removing the 2.50 years of service credit that he accumulated when he was employed part-time with UMMC when both UMMC and Carter made PERS contributions.

## STANDARD OF REVIEW

¶16. When reviewing a PERS decision, this Court adheres to a limited standard of review. This Court may only reverse a decision of PERS if the decision (1) is not supported by substantial evidence, (2) is arbitrary and capricious, (3) is beyond the authority of the Board to make, or (4) violated some statutory or constitutional right. *Ulrich v. Pub. Emps.' Ret. Sys.*, 281 So. 3d 259, 262 (¶10) (Miss. Ct. App. 2019); *see also Pub. Emps.' Ret. Sys. v. Ross*, 829 So. 2d 1238, 1240 (¶11) (Miss. 2002). "A decision by PERS has a rebuttable presumption in favor of its initial ruling." *Ulrich*, 281 So. 3d at 262 (¶10) (quoting *Pub. Emps.' Ret. Sys. v. Card*, 994 So. 2d 239, 242 (¶15) (Miss. Ct. App. 2008)). Therefore, when reviewing a decision by PERS, the appellate court examines the entire record before PERS, but it may not substitute its own judgment for that of PERS or reweigh the facts of the case. *Ross*, 829 So. 2d at 1240 (¶11); *see also Pub. Emps.' Ret. Sys. v. Kellum*, 878 So. 2d 1044, 1047 (¶6) (Miss. Ct. App. 2004).

9

¶17. The Mississippi Supreme Court has defined substantial evidence as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Pub. Emps.' Ret. Sys. v. Walker*, 126 So. 3d 892, 895 (¶7) (Miss. 2013) (quoting *Delta CMI v. Speck*, 586 So. 2d 768, 773 (Miss. 1991)). The evidence must be more than a "mere scintilla or suspicion." *Ulrich*, 281 So. 3d at 262 (¶11) (citing *Miss. Real Est. Comm'n v. Anding*, 732 So. 2d 192, 196 (Miss. 1999). "If the agency's decision is supported by substantial evidence, then the agency's decision stands. *Id.* at (¶10) (citing *Walker*, 126 So. 3d at 894 (¶5)).

**ANALYSIS**

¶18. Carter and PERS do not dispute that strict application of the pertinent statutes and PERS regulations require PERS to deny Carter's claim. Rather, on appeal, Carter argues the doctrine of equitable estoppel should apply and prevent PERS from removing 2.50 years of his service credits.

¶19. PERS adopted a regulation concerning eligibility for membership service credit. Regulation 36, Section 103(1) states:

> To receive service credit for any month, a member must be employed in a position in which the employee works the equivalent of at least half the normal workload for the position and earns at least half the normal compensation for the position in any month.

Regulation 36 also defines the monthly hourly requirement for service credit for employees in non-elected, non-school positions:

> [C]reditable service is only allowed for employment in a position in which the employee performs services and receives compensation for not less than 20 hours per week or a total of 80 hours per month.

¶20. Mississippi Code Annotated section 25-11-109(2)(b) (Rev. 2017) reinforces that

10

regulation into law:

> In no case shall credit be allowed for any period of absence . . . service less than the equivalent of one-half (½) of the normal working load for the position and less than one-half (½) of the normal compensation for the position in any month, constitute a month of creditable service . . . .

Moreover, Mississippi Code Annotated section 25-11-131(2) (Rev. 2018) mandates that errors in computation must be corrected upon detection. It reads as follows:

> Should any change or error in the records result in any member or beneficiary receiving from the retirement system more or less than he would have been entitled to receive had the records been correct, **the board of trustees shall correct such error upon detection, regardless of the length of time between the reporting error or the time payment started and the time the board became aware of the error, and, as far as practicable, adjust the payment in such a manner that the actuarial equivalent of the benefit to which such member or beneficiary was correctly entitled shall be paid. This responsibility is, and has been, the duty of the board since the creation of the retirement system**.

(Emphasis added).

¶21. Equitable estoppel requires that Carter show that (1) he believed and relied on some representation of PERS, (2) he changed his position as a result of the belief or reliance and (3) he suffered some detriment or prejudice resulting from the reliance. *Rowzee v. Pub. Emps.' Ret. Sys.*, 777 So. 2d 664, 668 (¶21) (Miss. 2000) (citing *Town of Florence v. Sea Lands Ltd.*, 759 So. 2d 1221, 1229 (Miss. 2000) (citing *Suggs v. Town of Caledonia*, 470 So. 2d 1055, 1057 (Miss. 1985))).

¶22. The Mississippi Supreme Court has previously addressed almost the exact issue presented here. In *Rowzee*, the supreme court granted a motion for rehearing to discuss "whether a public employee should be credited for part-time work" performed when he was

11

a graduate student at a public university and whether "the retirement system should be estopped from disallowing" the credit. *Id.* at 665 (¶2).

¶23.   In that case, Rowzee was employed as a "part-time"[9] graduate assistant at the University of Mississippi (University) from 1973 to 1974. During that time, the University's reports to PERS indicated that Rowzee was "an employee eligible for coverage." *Id.* at 666 (¶7). Many years later, in July 1991, Rowzee requested an estimate of his retirement benefits under the belief that he had twenty-five years of service credit and would be eligible for retirement. *Id.* (¶8). After PERS reviewed Rowzee's account, it concluded that Rowzee was not entitled to service credit for the time he was employed as a graduate assistant. *Id.* PERS explained that the University's report showed that Rowzee "worked less than half-time" and "received less than half pay for the position." *Id.* at 666 (¶8). Therefore, PERS must disallow[] the 1973-1974" service credit. *Id.* Rowzee appealed the denial of his "part-time" employment time. *Id.* at (¶10).

¶24.   On appeal, Rowzee argued that PERS should be "estopped" from declaring a portion of his time "ineligible" for service credit since so much time had elapsed since he received credit for the ineligible time. *Id.* at 668 (¶20). First, the supreme court reiterated that appellate review of a PERS decision is limited and the court must defer to PERS' findings if they were supported by substantial evidence. *Id.* (¶18). The evidence included PERS regulations that clearly defined the terms for eligibility and membership. *Id.* at 667 (¶16).

---

[9] Specifically, Rowzee was classified as a "quarter pay" employee, which the University defined as "a position with a salary which was one quarter of a full salary position." *Rowzee*, 777 So. 2d at 666 (¶6).

12

Further, the supreme court determined Mississippi Code Annotated section 25-11-131 mandated PERS to "correct" and "adjust" a member's benefits upon detection of errors regardless of any time delay in discovering the error. *Id.* at 668 (¶19). Therefore, the finding that Rowzee worked part-time for a certain period of time and thus was ineligible for PERS credit for that time was not error. *Id.* at (¶19). The supreme court concluded "the retirement system" should not be "estopped" from disallowing a credit "because of the passage of time" when the employee "was ineligible for retirement purposes." *Id.* at 665 (¶2).

¶25.   Regarding Rowzee's equitable estoppel argument, the supreme court concluded that Rowzee failed to present any evidence to show how he changed his position in reliance upon PERS' representations. *Id.* at 668 (¶22) The supreme court explained:

> Rowzee continues to be a member of PERS.  At the time of his inquiry Rowzee believed that he had accumulated 25 years of service credit.  Rowzee did not intend to and did not retire upon this belief nor did he take any other action to his detriment.  His inquiry was out of curiosity.[10]

*Id.* The supreme court acknowledged it was "unfortunate for him that the mistake was found and corrected after an inordinate amount of time," but "equitable estoppel simply does not apply on the facts of this case." *Id.*

¶26.   It is Carter's position that equitable estoppel applies to his case, and he testified that *Rowzee* "is distinguishable" because he "relied on information that UMMC [and] PERS had provided to [him] repeatedly and continuo[usly] over the years . . . [and] spent a great deal of money buying back time in reliance on that information."  Carter also explained that the

---

[10] The supreme court also found that Rowzee failed to prove "prongs 2 and 3 of the *Suggs* test." *Rowzee*, 777 So. 2d at 668 (¶22) (citing *Suggs*, 470 So. 2d at 1057).

"buy back" was the detriment because "that $80,000 is gone. . . . That $80,000 doesn't, I don't think, appear as cash in my account at PERS. It's certainly not in my IRA mutual fund accounts."[11] He said:

> It's translated into time. So I have, in effect, bought time with that money, but the money is gone, and now my retirement planning is still an uncertainty, still in disarray. So the harm is - - the detriment is continuous and ongoing.

¶27. However, the issues on appeal in this case are analogous to those presented in *Rowzee*. Here, there was substantial evidence before PERS that supported its decision to remove the 2.50 service credits and deny Carter's claim for reinstating the service credits by means of equitable estoppel. Carter was a part-time employee for the 2.50 years that were removed when he worked as a flight paramedic. PERS Regulation 36, Eligibility for Membership in PERS, clearly states "at least 20 hours of service per week or for a total of 80 hours per month." Mississippi Code Annotated section 25-11-109(2)(b) mandates that requirement for eligibility. Further, Mississippi Code Annotated section 25-11-131(2) mandates that PERS must correct errors upon detection "regardless of the length of time between the reporting error or the time payment started and the time the board became aware of the error of the time elapses between when the error was made and when it was discovered." PERS was complying with Mississippi law when it removed the ineligible time from Carter's retirement account.

¶28. The only question remaining in this case is whether PERS' decision to remove 2.50

---

[11] It is important to note that Carter got exactly what he paid for—5.50 years buyback for $80,000. He was not charged for, nor did he actually pay for, the 2.50 years of part-time work that is the subject of this appeal.

years of service credit from Carter's retirement plan was arbitrary and capricious. This decision was made in 2018 when Carter started working as a flight paramedic in 2001.

¶29. An "arbitrary" decision is "not done according to reason and judgment, but depending on the will alone." *Case v. Pub. Emps.' Ret. Sys.*, 973 So. 2d 301, 311 (¶24) (Miss. Ct. App. 2008) (citing *Miss. State Dep't of Health v. Natchez Cmty. Hosp.*, 743 So. 2d 973, 977 (Miss. 1999)). A "capricious" decision is "done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles." *Id.*

¶30. First, it is important to note that Carter received notifications regarding the minimum requirements for service credits. One of the notifications was Form 4A, which included an "Acknowledgment of Employment in Non-Covered Position." Carter signed "Form 4A" when he began employment with UMMC in 1996. "Form 4A" contained the following language:

> being employed by UM[M]C in the capacity or position of Flight Paramedic, do hereby acknowledge that I am not employed in a position working 20 hours or more each week or a total of 80 hours or more per month . . . . And that I therefore am not eligible for coverage under the provisions of PERS and permanently waive all claims for such coverage.

Carter's signature confirmed that Carter was aware that he was employed in a "non-covered position." Since Carter was aware that he was employed in a "non-covered position" his reliance on UMMC's representation and PERS' non-official monthly representations was contrary to what he signed.

¶31. Like *Rowzee*, the PERS decision was not arbitrary or capricious. Here, the record

15

proved that PERS considered the "surrounding facts and settled controlling principles" when evaluating Carter's claim and concluded to deny the reinstatement of Carter's service credit in accordance with those facts and principles. Further, if an agency's decision is supported by substantial evidence, it is not arbitrary or capricious. *Case*, 973 So. 2d at 310 (¶20) (citing *Pub. Emps.' Ret. Sys. v. Allen,* 834 So. 2d 50, 53 (¶10) (Miss. Ct. App. 2002)). As we have previously discussed and concluded, the Board's decision was supported by substantial evidence and mandated by the law of the State. *See* Miss. Code Ann. §§ 25-11-109(2)(b); 25-11-131(2). Therefore, it was not arbitrary or capricious.

## CONCLUSION

¶32. After reviewing the record, this Court finds no error and affirms the circuit court's judgment. Substantial evidence supported PERS' decision to remove 2.50 years of service credit and deny Carter's claim for reinstatement. Since substantial evidence supported the decision, this Court may not re-weigh the facts and substitute its own judgment for that of PERS.

¶33. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**