# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CC-01882-SCT

*PUBLIC EMPLOYEES' RETIREMENT SYSTEM*

*v.*

*ELSIE DEARMAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/11/2001 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MARY MARGARET BOWERS |
| ATTORNEYS FOR APPELLEE: | CHRISTOPHER COLLINS VAN CLEAVE |
| | CLYDE H. GUNN |
| | D. NEIL HARRIS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 04/03/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE PITTMAN, C.J., WALLER AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     The appeal arises from an order entered by the Circuit Court of the First Judicial District of Hinds County, Mississippi, on October 11, 2001. Elsie Dearman sought disability benefits from the Public Employees' Retirement System of Mississippi (PERS). The PERS Medical Board reviewed Dearman's request and denied her claim for disability benefits. There was an appeal of that decision to the PERS Disability Appeals Committee. A hearing was held wherein testimony was elicited and evidence received. The Committee presented its recommendation to the PERS Board of Trustees (Board), and the Board

denied Dearman's request. Dearman prosecuted an appeal to the circuit court which reversed the order of the Board of Trustees and granted disability benefits to Dearman. PERS raises the following issues on appeal:

I. WHETHER THE CIRCUIT COURT ERRED IN REWEIGHING THE FACTS AND SUBSTITUTING ITS JUDGMENT FOR THAT OF THE ADMINISTRATIVE AGENCY IN FINDING THAT MS. DEARMAN IS ENTITLED TO THE RECEIPT OF DISABILITY BENEFITS.

II. WHETHER THE CIRCUIT COURT ERRED IN DETERMINING THAT MS. DEARMAN PRESENTED SUBSTANTIAL EVIDENCE OF DISABILITY AND THAT THE DECISION OF THE BOARD OF TRUSTEES IS ARBITRARY AND CAPRICIOUS AS IT IS UNSUPPORTED BY THE EVIDENCE.

**FACTS**

¶2. Dearman began working for the Jackson County School District in August 1985. During the course of her tenure as a teacher, Dearman developed a large number of debilitating medical conditions, including fibromyalgia, chronic migraine headaches, chronic fatigue syndrome, cervical myofascial pain and numbness on her left side (including face, neck, arm, chest, torso, hip, leg and foot), asthma, chronic sinusitis, hepatitis, irritable bowel syndrome, hypothyroidism, anemia, and hypoglycemia. Ultimately, Dearman's health deteriorated to the point that she was advised by her treating physician, Dr. Terry Millette, to seek medical retirement. Dearman requested sick leave on November 30, 1998, giving upcoming medical appointments and sedation for severe pain as reasons for her sick leave request. Dearman assured her superiors she would monitor her substitute and wanted very much to return to teaching as soon as possible. However, Dearman was physically and mentally unable to perform the duties and responsibilities of her job, and she resigned from the Jackson County School District.

2

¶3.     Dearman applied for disability retirement with PERS, certifying she was forced to cease employment because of her present illness. William Lee, Jr., the Superintendent of Education, certified Dearman's application as being true and correct. Both Lee and Mary Tanner, principal of Dearman's school, certified to PERS that in their official opinions Dearman was unable to perform her job duties, and there were no reasonable accommodations which could be made to allow Dearman to continue her employment. Additionally, Dr. Terry Millette, Dearman's primary treating physician, submitted a "Statement of Examining Physician" to PERS which stated he found Dearman to be permanently disabled as a result of her medical condition.

¶4.     At no time did any physician on the Medical Board of PERS conduct a medical examination nor did they request an independent physician examine Dearman. The record reflects the only medical examination and medical opinion of Dearman's medical condition and disability are records submitted from Dr. Terry Millette.

¶5.     After five months without any response from PERS, Dearman sent a letter to PERS which inquired about her pending application. On August 23, 1999, PERS sent a letter which denied Dearman's claim. On October 15, 1999, Dearman filed an appeal. In support of Dearman's grounds for appeal, additional certified medical records were submitted from Drs. David H. Witty, Richard A. Nicholls, Howard L. Smith, Greg Redman and Bradley C. Cooper. On March 17, 2000, a hearing commenced before PERS Disability Appeals Committee. Submission of the Committee's recommendation and review by the Board determined that Dearman was not permanently disabled as defined under PERS law. Thus, the claim was again denied.

¶6.    On May 23, 2000, Dearman filed her notice of appeal in the Circuit Court of the First Judicial District of Hinds County, Mississippi. Following the submission of briefs, the circuit court reversed the decision of the PERS Board of Trustees.

## DISCUSSION

¶7.    PERS alleges that the circuit court erred because it reweighed the facts and substituted its judgment for that of the administrative agency in finding that Dearman was entitled to the receipt of disability benefits. PERS also argues that the decision by the Board of Trustees is based upon substantial evidence and should be reinstated. Substantial evidence has been defined as evidence which affords a substantial basis of fact from which the fact in issue can be reasonably inferred. *Davis v. Pub. Employees' Ret. Sys.*, 750 So.2d 1225, 1233 (Miss. 1999). PERS contends the facts as presented in the record before this Court support the decision of the PERS Board of Trustees that Dearman is not entitled to the receipt of regular disability benefits pursuant to Miss. Code Ann. § 25-11-113.

¶8.    Dearman claims the record contains no evidence which suggests she is not disabled or that she is able to perform her duties as a public school teacher. Dearman contends the medical evidence presented in this case is undisputed. The principal of Dearman's school as well as the superintendent of education certified that Dearman is unable to perform the duties of her former job and that no accommodations can be made to keep her gainfully employed. Dearman alleges that PERS failed to fulfill its statutory duty to have the Medical Board conduct a medical examination of her. Additionally, Dearman argues that substantial evidence of disability has been proven and the Board's decision was arbitrary and capricious as it is unsupported by the evidence.

¶9.    Since the issues of whether the circuit court erred in finding that the Board's denial of benefits was not supported by substantial evidence and whether the circuit court erred in finding that PERS denial of

benefits was both arbitrary and capricious are interrelated, they will be discussed simultaneously. Due to the findings of the circuit court, the primary question before this Court is whether the record contains substantial evidence to support the Board's finding that Dearman is not disabled, upon which it based its denial of benefits. This Court has defined "substantial evidence" as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." ***Delta CMI v. Speck,*** 586 So.2d 768, 769 (Miss. 1991). In reviewing the Board's decision, the circuit court observed evidence that Dearman suffers from numerous medical problems: depression, inability to sleep, constant pain, memory loss, changes in cognitive ability, inability to stand for long periods of time and constant fatigue. At the hearing before the PERS Disability Appeals Committee, Dearman gave extensive testimony concerning her disability and physical debilitation, including:

> She had to resign from teaching because she was too sick to keep working.

> She suffers from pain, numbness and semi-paralysis on her entire left side. Sometimes the pain in her face is so bad it feels like someone is sticking pencils in her ear.

> When she stands or sits for extended periods, drives or rides in a car for long distances, she has pain in her hip that feels like somebody is sticking a knife into her groin and pushing it in.

> She suffers from migraines and other problems which have existed for years but in the last year have become overwhelming.

> In the last few years she has developed frequent bladder infections and sometimes has pus or blood in her urine.

> She cannot stand for periods longer than four to five minutes without experiencing pain, and it is very painful for her to ride long distances in a car.

> She is no longer able to vacuum her home, grocery shop on her own or unload groceries from the car.

> She takes numerous forms of prescription narcotics, including Oxycontin, which she takes in the morning and in the afternoon per Dr. Millette's prescription.

¶10. Richard Dearman, Dearman's husband, also testified about her physical debilitation and her inability to perform daily household tasks. Additionally, the record contains numerous certified opinions. Dr. Millette, the only physician who examined the claimant, determined that Dearman is permanently disabled and incapable of performing her job responsibilities. Dr. Millette opined that Dearman is not expected to return to any type of gainful employment. Medical records indicate that Dr. Witty treated Dearman for asthma and chronic sinusitis. Dr. Witty anticipated Dearman would require long-term inhaled steroid use for control of asthmatic symptoms. Dr. Nicholls submitted a letter to PERS which disclosed Dearman had been his patient for twenty-two years and at Dearman's last examination she was diagnosed as suffering from anemia, fibrocystic breast disease, recurrent urinary tract infection, chronic cephalgia, mastodynia, fatigue and paresthesia of her left arm and left leg. Dr. Smith, a neurologist, examined Dearman in 1998 and noted episodic numbness and weakness in her left side, involving her head, torso, arm and leg. Dr. Smith opined Dearman suffers from hemiparesis and hemisensory change on her left side. In 1997, Dr. Redman diagnosed Dearman as suffering from an unusual group of symptoms involving left sided Paraesthesias, possibly related to a neurologic migraine. Dr. F. Orleans treated Dearman for severe stomach pain and bloody diarrhea. Dr. Orleans diagnosed Dearman as suffering from probable ulcer disease. An endoscopy performed by Dr. Orleans confirmed the diagnosis of irritable bowel syndrome.

¶11. Conversely, the record is devoid of any evidence that Dearman is not disabled. PERS failed to offer any medical evidence which disputed the opinions of Drs. Millette, Witty, Nicholls, Smith, Redman and Orleans. PERS contends physicians on the Medical Board and the Disability Appeals Committee reviewed the evidence and determined that Dearman was not disabled. However, their opinion is not

conclusive. PERS cannot choose to ignore the only evidence in the record from the examining physician, especially where it chose not to exercise its right to an independent medical evaluation under Miss. Code Ann. § 25-11-113(1)(c) (Rev. 1999). The circuit court noted that the medical evidence in this case is uncontroverted. The circuit court also reviewed statements from Dearman's former employer, the Jackson County School District, that Dearman was unable to perform the duties and responsibilities of her job and certified that no accommodations could remedy the situation.

¶12. The circuit court's findings are supported by decisions of this Court. ***Public Employees' Ret. Sys. v. Marquez,*** 774 So.2d 421, 423 (Miss. 2000), is factually similar to the case at bar. Like Dearman, Marquez suffered from a number of illnesses including fibromyalgia, depression, malignant tissue disease and had undergone a hysterectomy and cholestectomy. Marquez was denied permanent disability benefits and appealed that decision. PERS raised the same argument that Marquez suffered for years with many of the same conditions she now finds disabling but was able to continue working and asserts the record lacks "objective" evidence of disability. This Court rejected the argument by PERS that its denial of benefits was justified because the applicant was able to continue working with the same medical conditions in the past. In ***Marquez,*** this Court noted:

> the fact remains that there is recent medical evidence in the record suggesting that Marquez is incapable of performing her duties as a school teacher. The fact that Marquez was able to continue teaching over the years while suffering from certain ailments has little bearing on whether she was able to perform her duties at the time she applied for permanent disability benefits.

***Id.*** at 427. This Court determined that the lack of substantial evidence supporting the decision to deny permanent disability benefits rendered the decision arbitrary and capricious.

¶13. The scope of review of actions by administrative agencies such as PERS is well established. "An agency's conclusions must remain undisturbed unless the agency's order; (1) is not supported by substantial

7

evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates one's constitutional [or statutory ] rights." *Fulce v. Pub. Employees' Ret. Sys.,* 759 So.2d 401, 404 (Miss. 2000). The decision of the PERS Medical Board and Board of Trustees is not supported by substantial evidence. Miss. Code Ann. § 25-11-113(1)(a) clearly details the manner in which the Medical Board determines if disability is present:

> The inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation or the incapacity to perform the duties of any employment covered by the Public Employees' Retirement system (Section 25-11-101 et seq.) that is actually offered and is within the same general territorial work area, without material reduction in compensation. The employer shall be required to furnish the job description and duties of the member.

¶14.   It is clear from the record that Dearman is unable to perform her usual duties of employment and no accommodation could remedy the situation. "An administrative agency's decision is arbitrary when it is not done according to reason and judgment, but depending on the will alone." *Burks v. Amite County Sch. Dist.*, 708 So.2d 1366, 1370 (Miss. 1998). "An act is capricious if it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts."*Id.* Therefore, we find the evidence does not support a denial of disability benefits and that PERS' decision is arbitrary and capricious. "If an administrative agency's decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious." *Miss. State Dep't of Health v. Natchez Cmty. Hosp.*, 743 So.2d 973, 976 (Miss. 1999). For all the aforementioned reasons, we find no error by the circuit court..

## CONCLUSION

8

¶15. Dearman has been unable to work for more than three years because of disabling medical conditions, yet PERS has refused to pay any of the benefits to which she is entitled. The denial of benefits lacks evidentiary support in the record. Dearman's disability is certified by her former employer, treating physicians, and witness testimony. The circuit court did not err in finding that PERS' denial of benefits to Dearman was unsupported by substantial evidence and was, thus, arbitrary and capricious.

¶16. For the reasons stated above, we affirm the circuit court's judgment.

¶17. **AFFIRMED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, DIAZ, EASLEY AND CARLSON, JJ., CONCUR. COBB, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**COBB, JUSTICE, DISSENTING:**

¶18. The majority moves away from our long established precedents in PERS cases and shifts the burden of proof from the claimant to the agency. If this Court is going to change how we review the decisions of PERS and place new burdens and requirements on that agency, then we should explicitly say as much, the better to guide PERS in making its future rulings. However, I do not believe that such a change is warranted or wise, which is why I do not join the majority today.

¶19. Our recent opinion in *Public Employees' Retirement System v. Dishmon*, 797 So. 2d 888 (Miss. 2001), provides the background to this shift in our review of PERS cases. Dishmon's claim went to the Medical Review Board, which examined Dishmon's award from the Social Security Administration, "letters from her physician, and her description of other physical complications." *Id.* at 890. The board found no substantial evidence of statutory disability. *Id.* On appeal, the Disability Appeals Committee reviewed "Dishmon's testimony, findings of the Medical Review Board, Dishmon's employer statements,

9

letters from Dishmon's physician, Dishmon's medical records, and the disability award from the Social Security Administration," and found Dishmon had not proved statutory disability. *Id.* at 890-91.

¶20. Note that *none of the evidence before PERS consisted of contrary medical evidence asserting that Dishmon was not disabled*. PERS did not avail itself of its statutory power to mandate a medical examination under Miss. Code Ann. § 25-11-113(1)(e).

¶21. This Court reversed the decision of PERS to deny benefits, but we did so based on a violation of due process when the same individual sat on the board and committee that considered Dishmon's claim. *Id.* at 897. However, before reaching that holding, this Court first addressed whether PERS acted arbitrarily and capriciously in denying Dishmon any disability benefits.

¶22. We held that the burden was on Dishmon to prove her disability, and that even though she had diabetes, PERS was not arbitrary or capricious in finding that, insofar as she had been employed for eight years while suffering from that disease and she showed no new signs of debility, she was not statutorily disabled. *Id.* at 893. "The Board and Committee apparently concluded that Dishmon was either untruthful or the injury described was not significant enough to warrant disability. This Court cannot attempt to weigh the credibility of Dishmon." *Id.* The trier of facts, i.e. the Committee, was entitled to deferential review as the party best qualified to evaluate the weight of the evidence. *Id.*

¶23. Moreover, although Dishmon's employer said it considered her disabled, this Court stated: "PERS convincingly argues that the opinion of a lay person should not be taken as conclusive evidence of disability." *Id.* at 894. We also held that her primary physician's finding that Dishmon was "permanently and totally disabled" was not binding on PERS, since the Board and Committee took the physician's finding into account in making their determinations. *Id.*

10

¶24. In the present case, Dearman's physician and employer say that she is disabled, on facts very similar to those in ***Dishmon.*** However, the majority now reaches the opposite conclusion. It reweighs the evidence and decides that Dearman is disabled. In doing so, the majority states:

> PERS contends physicians on the Medical Board and the Disability Appeals Committee reviewed the evidence and determined that Dearman was not disabled. However, their opinion is not conclusive. PERS cannot choose to ignore the only evidence in the record from the examining physician, especially where it chose not to exercise its right to an independent medical evaluation under Miss. Code Ann. § 25-11-113(1)(c) (Rev. 1999). The circuit court noted that the medical evidence in this case is uncontroverted.

Maj. op. at ¶11. This position abandons this Court's opinion in ***Dishmon*** in favor of rewriting the disability claims process. The new rule, according to the majority, is that any time that a claimant comes before PERS with a doctor's opinion that she is disabled, PERS is *required* to find her disabled unless it has received controverting evidence from an examination that it has ordered. That is to say, the burden shifts to PERS once the claimant has produced evidence in her favor.[1]

¶25. The majority offers no authority for such burden-shifting in administrative cases. Instead, it cites our recent opinion in ***Public Employees' Retirement System v. Marquez***, 774 So. 2d 421 (Miss. 2000). In that case, this Court said:

> the PERS board of trustees acted, **but we do not know what it was about the evidence that persuaded the board that Marquez was not disabled**. PERS **put forth no controverting evidence** in the face of various medical diagnoses made by various credible doctors. When medical evidence and testimony given by Marquez is contrasted with PERS's rationale for denial of benefits, the evidence supporting PERS's decision to deny benefits appears insubstantial. The circuit court judge reviewed the evidence before her and found that there was sufficient evidence to grant permanent disability benefits. It is within the power of the circuit court to reverse PERS' decision if such decision was not supported by substantial evidence. As stated earlier, substantial evidence means "such relevant evidence as reasonable minds might accept as adequate to

---

[1] There certainly is nothing in § 25-11-113 to suggest that PERS is required to order a new examination under subsection (1)(e). The language of that subsection is permissive ("may request").

11

support a conclusion." ***Delta CMI***, 586 So. 2d at 768. In support of its conclusion, PERS **has stated only that Marquez lacks sufficient "objective" medical evidence. In light of the objective diagnoses made by Marquez's treating physicians, PERS's conclusion is simply not substantiated by the record.**

774 So. 2d at 429 (emphasis added). This language does not, as the majority thinks, support a burden-shifting requirement. Our complaint in ***Marquez*** was not simply the lack of controverting evidence. Rather, it was the fact that PERS failed to explain what was supposedly wanting in the evidence before it, but instead merely labeled it "subjective" without further explanation, so that "we [did] not know what it was about the evidence that persuaded the Board that Marquez was not disabled." We did not have a reviewable decision before us.

¶26. In the present case, the Committee's determination, upon reviewing the records and hearing Dearman herself testify, was that her physical examinations had failed to present any evidence of a disabling condition, and that Dearman's "behavior is indicative of factitiousness, that is, the deliberate creation of false symptoms in an effort to obtain attention, in this case, medical care." That is to say, PERS did not ignore Dearman's evidence, but simply found it insufficiently credible to meet her burden of proof.

¶27. That is a classic example of the kind of determination this Court leaves to the agency. *See, e.g.,* ***Byrd v. Pub. Employees' Ret. Sys.***, 774 So. 2d 434, 438 (Miss. 2000) (PERS has discretion how much weight to assign evidence); ***Walters v. Miss. Dep't of Econ. & Cmty. Dev.***, 768 So. 2d 893, 895 (Miss. 2000) (reversal proper only where agency's order is against "overwhelming weight of the *credible* evidence (emphasis added)); ***Nelson v. Miss. State Bd. of Veterinary Med.***, 662 So. 2d 1058 (Miss. 1995) (agency "is charged with determining the credibility and weight" of evidence).

> Issues of fact and credibility are the primary responsibility of the trier of fact. Accordingly, this Court should not reweigh the facts nor substitute its judgment for that of the fact finder as to credibility issues. The reviewing court is only concerned with the reasonableness of the administrative order, not its correctness.

*McFadden v. Miss. State Bd. of Med. Licensure*, 735 So. 2d 145, 152 (Miss. 1999). Nevertheless, the majority decides to determine for itself whether Dearman's claim was a credible one. **In doing so, it rewrites the law established by *Dishmon* and *Byrd*.**

¶28. The majority relies on its reading of our familiar tests for review of administrative actions: "An agency's conclusions must remain undisturbed unless the agency's order 1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates one's constitutional . . . rights." Maj. op. at ¶13 (quoting *Fulce v. Pub. Employees' Ret. Sys.*, 759 So. 2d 401, 404 (Miss. 2000)). Seizing on the first element, the majority concludes that, because no substantial evidence in the record supported PERS's findings, its decision was not supported by substantial evidence.

¶29. But that application of a general test to a specific agency's procedures results in a misfire. We have already seen that the burden of proving disability rests with the claimant and that PERS is entitled to determine the weight and credibility of the evidence. "Supported by substantial evidence" in this context means that PERS has placed on the record a sufficient explanation of its determination that its reasoning can be understood, as this Court required in *Marquez*. It obviously, in light of *Dishmon*, does not mean that PERS must have a doctor's examination report saying that the claimant is not disabled. That would place the burden on PERS to prove that the claimant is not disabled, directly contrary to our precedents. Rather, our fundamental concern should be with whether PERS has supported its decision with a reasonable explanation, as opposed to acting arbitrarily and capriciously.

¶30. In any event, the Board and Committee had substantial evidence before them from which to evaluate Dearman's credibility, namely, Dearman's testimony itself, together with the records of her visits to various doctors who could find no physical basis for her complaints. Substantial evidence "means

13

evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred." ***Cent. Elec. Power Ass'n v. Hicks***, 236 Miss. 378, 389, 110 So. 2d 351, 357 (1959) (quoting ***Consol. Edison Co. of N.Y. v. NLRB***, 305 U.S. 197, 217, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). The "fact in issue," the insufficiency of Dearman's claim, can be reasonably inferred from the record, given that PERS was in the best position to evaluate Dearman's credibility.

¶31.   Cases like Dearman's are hard ones to decide. A claimant professes to be in great pain so that she can no longer work. It is difficult to evaluate such claims: legitimately disabled persons are entitled to relief, but on the other hand, if PERS is required to credit every such claim before it, then it may as well close up shop and just write checks. Such hard cases and close calls are best made by the administrative agency with the professional skills, the daily experience, and the face-to-face opportunity to evaluate these close calls. That is why administrative agencies exist; why we regularly defer to their findings; and why the majority errs in deciding, on a cold record, that judicial opinions outweigh medical ones.

¶32.   For these reasons, I respectfully dissent.