878 So.2d 1044 (2004)
The PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Appellant
v.
Ebba KELLUM, Appellee.
No. 2003-CC-00315-COA.
Court of Appeals of Mississippi.
July 20, 2004.
*1045 Office of the Attorney General by Mary Margaret Bowers, attorney for appellant.
Michelle Dean Easterling, attorney for appellee.
*1046 Before KING, C.J., BRIDGES, P.J., and CHANDLER, J.
CHANDLER, J., for the Court.
¶ 1. The Public Employees' Retirement System (PERS) appeals from an order of the Circuit Court of the First Judicial District of Hinds County reversing the denial of benefits to Ebba Kellum. We find no error and affirm the decision of the circuit court.

FACTS
¶ 2. Ebba Kellum has twelve years of creditable service with the Columbus Municipal School District. On May 15, 1997, Kellum suffered a stroke while driving to her job as a school secretary at Sale Elementary School, a position she had held since January 1997. On November 29, 1999, Kellum filed an application for disability benefits with PERS. In the application, Kellum stated that she had terminated her employment with the Columbus Municipal School District on October 1, 1999, as a result of illness. The PERS Medical Board denied the claim, and Kellum appealed. A hearing was held before the Disability Appeals Committee on September 11, 2000.
¶ 3. At the hearing, Kellum testified that she could no longer perform her job due to the residual effects of the stroke. Kellum submitted medical records from her sole treating physician, Dr. Mark Fletcher. The Disability Appeals Committee determined that there was insufficient objective evidence in the record to show that Kellum was disabled and recommended that Kellum's request for benefits be denied. The PERS Board of Trustees approved and adopted the recommendation of the Disability Appeals Committee.
¶ 4. Kellum appealed to the Circuit Court of the First Judicial District of Hinds County. The circuit court reversed the decision of the Board of Trustees, finding that it was not supported by substantial evidence in the record and was arbitrary and capricious. PERS now appeals from the order of the circuit court.

LAW AND ANALYSIS
¶ 5. PERS is a state agency which provides retirement and disability income to state employees. Miss.Code Ann. § 25-11-3 (Rev.2003). Mississippi Code Annotated section 25-11-113(1)(a) provides:
Upon the application of a member or his employer, any active member in state service who has at least four (4) years of membership service credit may be retired by the board of trustees... provided that the medical board, after an evaluation of medical evidence that may or may not include an actual physical examination by the medical board, shall certify that the member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that the member should be retired; however, the board of trustees may accept a disability medical determination from the Social Security Administration in lieu of a certification from the medical board.
Id. PERS must apply the following statutory definition of disability in making its disability determination:
the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by [PERS] ... that is actually offered and is within the same general territorial work area, without material reduction in compensation.
*1047 The applicant for disability income bears the burden of proving that he or she is actually disabled. Pub. Employees' Ret. Sys. v. Dishmon, 797 So.2d 888, 893 (¶ 15) (Miss.2001).
¶ 6. PERS argues that the Board's decision to deny disability benefits to Kellum was supported by substantial evidence and was not arbitrary or capricious, and that the circuit court erred by reweighing the facts and substituting its judgment for that of PERS. When reviewing PERS decisions, this Court adheres to a limited standard of review. We may only reverse a decision of PERS if the decision (1) is not supported by substantial evidence, (2) is arbitrary and capricious, (3) is beyond the authority of the Board to make, or (4) violated some statutory or constitutional right. Pub. Employees' Ret. Sys. v. Ross, 829 So.2d 1238, 1240 (¶ 11) (Miss.2002). When reviewing a PERS order, we examine the entire record before PERS, but we may not substitute our judgment for that of PERS, or reweigh the evidence before the agency. Id. Further, there is a rebuttable presumption in favor of the agency's decision. Doyle v. Pub. Employees' Ret. Sys., 808 So.2d 902, 904(¶ 5) (Miss.2002). This standard of review is identical to that applied by the circuit court. Dishmon, 797 So.2d at 890(¶ 9).
¶ 7. In the present case, no party contends that the PERS order was beyond the power of the agency to make or violated a statutory or constitutional right. Therefore, the question before us is whether PERS's decision to deny benefits to Kellum was based on substantial evidence or was arbitrary or capricious. The supreme court has defined "substantial evidence" "as something more than a `mere scintilla' or suspicion." Pub. Employees' Ret. Sys. v. Marquez, 774 So.2d 421, 425 (¶ 13) (Miss.2000). Evidence is substantial if it "provides an adequate basis of fact from which the fact in issue can be reasonably inferred." Dishmon, 797 So.2d at 892 (¶ 13). An agency decision is arbitrary "when it is not done according to reason and judgment, but depending on the will alone." Miss. State Dept. of Health v. Natchez Cmty. Hosp., 743 So.2d 973, 977 (¶ 13) (Miss.1999). "An action is capricious if done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles." Id. An agency decision that is not based on substantial evidence is necessarily arbitrary and capricious. Marquez, 774 So.2d at 430 (¶ 35).
¶ 8. We review the evidence before PERS. Kellum testified that, while driving to work on May 15, 1997, she experienced visual difficulties. When she arrived at work, her left hand was not functioning properly and her head "felt kind of full." At the emergency room of Baptist Memorial Hospital-Golden Triangle in Columbus, a CAT scan revealed that she had suffered an intra-cranial hemorrhage. Later testing ordered by Dr. Fletcher at the Tupelo Neurology Clinic confirmed that Kellum's stroke had been caused by a cerebral vein thrombosis resulting from a protein C deficiency. Dr. Fletcher placed Kellum on Coumadin therapy to correct the protein C deficiency. Dr. Fletcher also determined that Kellum suffered from partial seizures, for which he prescribed the anticonvulsant drug Dilantin and, later, Neurontin. Dr. Fletcher's notes state that Kellum experienced short-term memory loss and cognitive difficulties caused by the stroke.
¶ 9. Kellum testified about her duties as an elementary school secretary. Her immediate supervisor was the school principal, for whom she provided general secretarial assistance such as typing and *1048 making copies. She was also responsible for opening the school building every morning and turning off the alarm, taking the lunch count, administering cafeteria plans, posting absentees on the computer, noting student tardiness, administering medicine to students, and interacting with parents, students and the public. She also made receipts for funds that were collected on a weekly basis and deposited the funds every Friday. She used the computer to generate monthly reports on attendance and funds. At the beginning of each school year she had additional duties, such as student registration, procuring supplies for teachers, and handing out workbooks. A PERS Form 6B was submitted by Reita Humphries, who was Kellum's supervisor until August 1999. The form indicated that Kellum's job required her to frequently use technical knowledge and frequently write and complete reports. The job required frequent sitting and occasional walking.
¶ 10. Kellum testified that she was able to perform all aspects of the job before the stroke. After the stroke, she stayed home from work until July 1997. Upon her return to work, Kellum experienced difficulty performing her job. She testified that she could not remember how to operate the computer and had trouble controlling her left hand while typing. Kellum testified that the computer program required her to enter information within a certain length of time and that these problems rendered her unable to enter information into the computer with the requisite speed, causing her to have to start over. She testified that, after the stroke, she experienced extreme difficulty performing more than one task at a time. For example, she could not perform duties such as talking on the phone while simultaneously writing tardy slips, using the computer, or dealing with a student. Kellum said that she had "anxiety attacks" when she was required to perform multiple tasks at once and found herself unable to do so. She stated that her memory problems improved in 1998 but worsened in 1999. Kellum's husband testified that Kellum ceased performing many household tasks since the stroke. He stated that she "forgets readily" and that often he must repeatedly tell her things that she has forgotten.
¶ 11. Kellum stated that, due to her difficulty performing her job, Humphries assumed many of Kellum's job responsibilities. Humphries began helping students, answering the phone, and doing typing for Kellum when Kellum was doing other tasks. Kellum testified that she became frustrated at not being able to perform all the job requirements and sometimes cried at work. Prior to the commencement of the 1999 school year, Humphries was transferred to another district, and Kellum began reporting to a new principal. Kellum testified that the new principal expected Kellum to fully perform all of her job duties and would not assist her. Kellum testified that because of her condition she was unable to perform all of her duties and grew further and further behind. She said that she became nervous and stressed and decided to resign due to her health condition.
¶ 12. On the Form 6B, dated June 21, 1999, Humphries stated that Kellum could perform her job, but "not to her best," and that "she becomes very frustrated and emotionable [sic] at times." In an affidavit dated September 5, 2000, Humphries stated that, when Kellum returned to work after the stroke, Humphries noticed a dramatic difference in her ability to perform her daily responsibilities. Humphries stated that Kellum was no longer able to perform tasks in a timely and efficient manner, that her computer skills had declined, and that she became frantic and nervous when unable to perform. Humphries *1049 stated that she assumed some of Kellum's job duties in an effort to relieve some of the pressure on Kellum. Humphries opined that, as of Humphries' departure from Sale Elementary School in August 1999, Kellum was unable to perform the duties required of a secretary.
¶ 13. On January 6, 2000, Dr. Fletcher completed a "Statement of Examining Physician" form regarding Kellum's condition. Dr. Fletcher diagnosed Kellum with stroke, protein C deficiency, and seizures, for which the prognosis was guarded. He found that she exhibited difficulty with cognitive processing. He stated that she was permanently disabled because "stroke injury is irreversible," and that she needed treatment for an indefinite period.
¶ 14. Because the school district did not assign Kellum lesser duties and Kellum was never offered any other job covered by PERS, the question before PERS was whether Kellum presented substantial evidence that she was unable to perform the usual duties of her job as a school secretary, that she was mentally or physically incapacitated for the further performance of duty, that such incapacity was likely to be permanent, and that Kellum should be retired. Miss.Code Ann. § 25-11-113(1)(a) (Rev.2003). In its recommendation that was adopted by the Board of Trustees, the Disability Appeals Committee found that Dr. Fletcher's records substantiated that Kellum had suffered a stroke resulting from a protein C deficiency. The Committee stated that, while Dr. Fletcher's records corroborated Kellum's testimony about short-term memory loss, the records provided no guidance as to the cause of the memory loss. The Committee stated that Kellum testified that her memory loss waxed and waned, and that "this is not characteristic of the affects [sic] of a stroke." The Committee noted that Kellum did not show evidence of memory loss at the hearing, and was able to accurately describe her conditions, medications, and job history. The Committee decided to place little weight on Humphries' affidavit stating that Kellum could not perform her job duties because it was somewhat contradicted by her earlier statement that Kellum could perform her job duties, but not to her best. The rest of the Committee's recommendation recited facts and the applicable law. The Committee concluded that there was "insufficient objective medical evidence to support Mrs. Kellum's claim that she is permanently disabled from her job as a secretary."
¶ 15. The circuit court held that PERS's decision was not supported by substantial evidence because the record contained substantial evidence that Kellum was disabled and contained no evidence disputing her claim of disability. We agree. In affirming the decision of the circuit court, this Court is informed by the cases of Public Employees' Retirement System v. Dearman, 846 So.2d 1014 (Miss.2003) and Public Employees' Retirement System v. Marquez, 774 So.2d 421 (Miss.2000). See also Cauthen v. Pub. Employees' Ret. Sys., 860 So.2d 829 (Miss.Ct.App.2003).
¶ 16. In Marquez, the claimant suffered from multiple illnesses including fibromyalgia and chronic fatigue syndrome. Marquez, 774 So.2d at 423(¶ 1). PERS found that there was insufficient objective evidence that Marquez's medical problems rendered her permanently disabled from her job as a school teacher. Id. at 428-29 (¶ 29). Marquez submitted medical records tending to confirm her health problems. Id. at 427 (¶ 23). The supreme court observed that medical records are considered objective, not subjective, evidence of disability. Id. at 427 (¶ 22). The supreme court found that PERS's conclusion was not substantiated by the record because PERS did not put forth any evidence *1050 controverting Marquez's claim that she was disabled, and PERS did not adequately explain why it rejected the objective medical evidence of Marquez's disability. Id. at 429 (¶ 31).
¶ 17. In Dearman, the court more clearly articulated that medical evidence of disability provided by an examining physician is objective evidence that must be afforded elevated respect by PERS. Dearman, 846 So.2d at 1018 (¶ 11). Dearman claimed that various health conditions rendered her disabled from her job as a teacher. Id. at 1016(¶ 3). Dearman's treating physician found her permanently disabled as a result of her medical condition and recommended that she cease work. Id. at 1015(¶ 2). PERS found that Dearman had failed to prove disability. Id. at 1016(¶ 5). The supreme court found that the PERS's order was not supported by substantial evidence because the record was "devoid of any evidence that Dearman is not disabled." Id. at 1018 (¶ 11). The court stated that the opinions of the physicians on the Medical Board and the Disability Appeals Committee are not conclusive, and that "PERS cannot choose to ignore the only evidence in the record from the examining physician, especially where it chose not to exercise its right to an independent medical evaluation under Miss.Code Ann. § 25-11-113(1)(c)." Id.
¶ 18. In the case sub judice, the record reveals that Dr. Fletcher is the only physician who ever examined Kellum, and that he had been her treating neurologist since the stroke. It is apparent from PERS's order that the rationale for its decision was the Committee's disagreement with Dr. Fletcher's medical findings. Yet, no basis for that disagreement appears in the record. The Committee stated that Dr. Fletcher's records provided "no guidance" as to the cause of Kellum's memory loss or her seizures. This conclusion is belied by Dr. Fletcher's office notes. On November 10, 1997, Dr. Fletcher stated that Kellum's memory deficits resulted from the stroke. On June 2, 1999, Dr. Fletcher stated that Kellum had "cognitive deficits which I fear are as a result of her underlying stroke." Regarding Kellum's seizures, on June 2, 1999 and November 19, 1999, Dr. Fletcher noted that Kellum had a history of seizures and a stroke from a protein C deficiency.
¶ 19. The Committee also relied upon its own opinion that a stroke does not cause the cognitive symptoms which Kellum experienced, but that conclusion is unsupported by even a scintilla of evidence in the record. The medical evidence in the record shows that, after Kellum reported improved memory function in 1998 and then decreased memory function in 1999, Kellum's neurologist thought that she had "cognitive deficits [which] were the result of her underlying stroke." In the physician's statement, Dr. Fletcher stated that Kellum's difficulty with cognitive processing was permanent. PERS must base its decisions on evidence that appears in the record. The opinions of the physicians on the Medical Board and Disability Appeals Committee "are not conclusive" and PERS cannot ignore evidence provided by the examining physician. Dearman, 846 So.2d at 1018 (¶ 11).
¶ 20. We find that, in light of the contrary medical evidence from the examining physician, the Committee's finding that Kellum did not exhibit memory problems at the hearing was insubstantial support for its conclusion that Kellum did not have a permanent cognitive deficit. As in Dearman, PERS chose not to order an independent medical examination of Kellum that would have allowed it to compare Dr. Fletcher's conclusions with those of another examining physician. As in Dearman, the record is devoid of any evidence that would support a conclusion that Kellum is not disabled. Therefore, we find that *1051 PERS's order was not supported by substantial evidence and was arbitrary and capricious. We affirm the decision of the circuit court reversing the denial of disability benefits to Kellum.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES P.J., LEE, IRVING, MYERS AND GRIFFIS, JJ., CONCUR. SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., BRIDGES, P.J., LEE, IRVING AND GRIFFIS, JJ.
SOUTHWICK, P.J., Concurring.
¶ 22. I write separately because of the continuing disconnect between the requirements of judicial review and what surely are good faith efforts by the professionals on the Disability Appeals Committee to apply their expertise to the cases brought to them. I do not know what percentage of the Disability Appeals Committee's work is ultimately reviewed by a court. For purposes of efficiency, the Committee may desire to continue to rely just on the unrecorded expertise of the physicians on that committee in reviewing appeals presented to them. So long as the case goes no further, there is no means for objection.
¶ 23. However, the Committee has been informed in several opinions, some by the two appellate courts, that the judicial review process requires actual evidence in the record. The physicians on the Disability Appeals Committee may be reaching completely valid medical opinions. Even in the present appeal, the rejection of evidence about Kellum's conditions may have a sound medical foundation. What the judicial review process requires, though, is a sound evidentiary foundation.
Conversely, the record is devoid of any evidence that Dearman is not disabled. PERS failed to offer any medical evidence which disputed the opinions of Drs. Millette, Witty, Nicholls, Smith, Redman and Orleans. PERS contends physicians on the Medical Board and the Disability Appeals Committee reviewed the evidence and determined that Dearman was not disabled. However, their opinion is not conclusive. PERS cannot choose to ignore the only evidence in the record from the examining physician, especially where it chose not to exercise its right to an independent medical evaluation under Miss.Code Ann. § 25-11-113(1)(c) (Rev.1999). The circuit court noted that the medical evidence in this case is uncontroverted.
Public Employees' Ret. Sys. v. Dearman, 846 So.2d 1014, 1018 (Miss.2003).
¶ 24. In this case, PERS argues that all five physicians on the Disability Appeals Committee reviewed the evidence and applied their medical expertise. However, before that expertise can be understood once judicial review occurs, some systematic means by which the expertise is reduced to evidence for the record needs to be developed at PERS. There is a converging of professions in the legal evaluation of medical claims. For judicial review properly to operate, the courts need to be given information that can be evaluated and not just results that are to be trusted.
¶ 25. Based on this record and such precedents as are cited by the majority, I concur.
KING, C.J., BRIDGES, P.J., LEE, IRVING AND GRIFFIS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.