# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-SA-00642-COA

**CATHY F. ROBERTS**                                                                           **APPELLANT**

**v.**

**PUBLIC EMPLOYEES' RETIREMENT SYSTEM**                          **APPELLEE**
**OF MISSISSIPPI**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/24/2015 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | GEORGE S. LUTER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JANE L. MAPP |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | AFFIRMED DENIAL OF DISABILITY BENEFITS |
| DISPOSITION: | AFFIRMED - 08/02/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE LEE, C.J., CARLTON AND GREENLEE, JJ.

### LEE, C.J., FOR THE COURT:

### PROCEDURAL HISTORY

¶1.     Cathy Roberts was employed as a psychologist for the Ellisville State School (ESS). In December 2011, Roberts applied for duty-related disability benefits based upon a disability she claimed resulted from an on-the-job injury on January 17, 2001. The Public Employees' Retirement System (PERS) Medical Board initially denied her claim. A hearing before the PERS Disability Appeals Committee (DAC) was conducted January 14, 2013. During the hearing, Roberts indicated that her last day of employment at ESS had been January 11,

2013.[1] The DAC found that Roberts was not eligible for duty-related disability benefits. Roberts appealed to the PERS Board of Trustees (the Board), which adopted the recommendation of the DAC. Roberts appealed to the Hinds County Circuit Court, which affirmed the Board's decision. Roberts now appeals to this Court, asserting that (1) the Board's decision was not supported by substantial evidence, and (2) the Board failed to obtain certain medical records.

**FACTS**

¶2. On January 17, 2001, Roberts was assisting with an aggressive patient. The patient kicked Roberts, and she fell on the floor, landing on her bottom. After standing back up, Roberts was kicked again by the patient and fell against a wall. Roberts stated she did not feel any immediate pain from the incident, but did complete an incident report. Approximately one to two weeks later, Roberts testified that she could not get out of bed due to lower-back pain. She was told by someone at work to see a doctor.[2] According to Roberts, this doctor gave her an injection and pain medicine. Roberts stated this doctor thought she had a pinched nerve and referred her to Dr. Susi Folse, a bone and joint specialist.

¶3. Dr. Folse noted Roberts complained of lower-back pain and recommended physical

---

[1] Roberts had 23.75 years of service.

[2] The record is unclear which doctor Roberts visited. The earliest medical record is from an office visit to Dr. Charles Hernandez on February 23, 2001. The clinic notes indicate Roberts had "prior history of back pain and was under the care of Dr. Fromke for sciatica." The DAC inferred that "Dr. Fromke" was actually Dr. Susi Folse. According to one of Dr. Folse's clinic notes, dated June 4, 2001, Roberts informed her that she had seen Dr. Hernandez "a few days" after the injury.

2

therapy and pain medicine. Dr. Folse also ordered an x-ray, and her clinic notes indicated the x-ray showed "slight decreased disc space at L5-S1 with mild retrolisthesis." Roberts saw Dr. Folse several more times for her low-back pain. Dr. Folse's assessment was "low back pain with mild degenerative changes and mild retrolisthesis." Dr. Folse ordered an MRI, which was "within normal limits." Dr. Folse indicated Roberts suffered from sacroiliac joint dysfunction. Roberts continued with physical therapy and received at least two injections to relieve her pain. Dr. Folse then referred Roberts to Dr. Bertha Blanchard, a neurologist.

¶4. The medical records before us indicate Dr. Blanchard treated Roberts from January 22, 2002, through May 4, 2009. Dr. Blanchard initially diagnosed Roberts with "right sacroiliitis [and] right sciatica[,] which seem[ed] to be the result of an injury that occurred" at work on January 17, 2001. However, after ordering a bone scan, Dr. Blanchard concluded that Roberts's pain was the result of "significant degenerative changes on the right side." Dr. Blanchard's impression was "right sacroiliitis[,] which is secondary to degenerative changes. [Roberts] also ha[d] degenerative changes in her lumbosacral spine on the right based on [the] bone scan." Dr. Blanchard determined Roberts was at maximum medical improvement (MMI) on June 4, 2002, and gave her a five percent permanent-partial rating. Dr. Blanchard also issued permanent work restrictions—no lifting, pushing, or pulling over ten pounds. Roberts was to continue taking pain medicine. Due to increasing pain, Roberts continued to see Dr. Blanchard periodically. During this time, Roberts also began experiencing pain in her right knee. The last clinic notes in the record indicate "chronic sacroiliitis on the right,

3

secondary to a workers' compensation injury. Condition stable with medication. . . . [Roberts] is contemplating disability."

¶5.     At one point, Dr. Blanchard referred Roberts to Dr. James Sikes, an orthopaedic surgeon, for treatment of Roberts's right-knee pain. Dr. Sikes performed arthroscopic surgery on Roberts's right knee in May 2008. Roberts returned to Dr. Sikes approximately fourteen months later complaining of pain in her right knee. Dr. Sikes noted that she still suffered from "chondromalacia and osteoarthritis." Dr. Sikes concluded Roberts had "degenerative joint disease of the right knee."

¶6.     Dr. Blanchard also referred Roberts to Dr. Kelly Bernardo, a neurosurgeon. Dr. Bernardo's records were never obtained.

¶7.     The medical records indicate that Roberts was under the care of Dr. Hernandez, an internist, from February 23, 2001, through October 21, 2011. Dr. Hernandez's records indicate Roberts continued to see him for treatment of her chronic back pain as well as obesity and hypertension. Dr. Hernandez completed a PERS Form 7 on November 7, 2011, indicating that Roberts suffered from moderate to severe chronic back pain. Dr. Hernandez did not list any impairments but did list restrictions such as no heavy lifting, pulling, or pushing and no prolonged standing or sitting.

¶8.     Beginning in late 2009, Roberts periodically visited Dr. Joseph Farina, a neurologist. Dr. Farina completed a PERS Form 7 on November 30, 2011, indicating that Roberts suffered chiefly from chronic sacroiliitis and limitations included no heavy lifting or prolonged standing.

4

¶9.    Roberts was sent to Dr. David Collipp for an independent medical examination (IME) on February 21, 2012. Dr. Collipp noted he had previously completed an IME on Roberts on March 23, 2010, as requested by PERS.[3] After reviewing Roberts's medical records and conducting an examination, Dr. Collipp concluded that Roberts's current medical condition was not caused by her on-the-job injury on January 17, 2001. Rather, her back pain was consistent with the "progression of degenerative disease and obesity involvement." Dr. Collipp stated that Roberts was physically capable of working but limited her to lifting no more than twenty-five pounds.

¶10.    In 2012, Roberts was diagnosed with carpal tunnel syndrome. There was testimony concerning this diagnosis and the pain experienced by Roberts; however, Roberts does not allege that this is related to her on-the-job injury on January 17, 2001. Roberts also had other work-related injuries over the years, but recovered from them.

¶11.    The record indicates Roberts was able to perform the functions of her job with the restrictions for over ten years. Roberts testified her job requirements included completing paperwork, entering data into the computer, and performing client intervention training with the staff. After her injury, she was no longer required to perform physical work, such as restraining clients. Roberts indicated she did miss work when her pain was severe, sometimes as much as several days per month in the year prior to the hearing on January 14,

---

[3] The record is unclear why PERS ordered this IME. In this IME, Dr. Collipp concluded that Roberts's "gradual progression of her back condition since 2001 is not caused by her 2001 injury." Dr. Collipp did note that Dr. Bernardo's records might be helpful since Roberts indicated Dr. Bernardo told her she might benefit from low-back surgery.

5

2013.

## STANDARD OF REVIEW

¶12. The scope of review of actions by administrative agencies is well established. According to Uniform Circuit and County Court Rule 5.03, it is the duty of the reviewing court to ascertain whether the Board's decision (1) was supported by substantial evidence; (2) was arbitrary or capricious; (3) was beyond the power of the agency to make; or (4) violated some statutory or constitutional right of the complaining party. *See also Pub. Emps. Ret. Sys. v. Dearman*, 846 So. 2d 1014, 1018 (¶13) (Miss. 2003); *Pub. Emps. Ret. Sys. v. Dishmon*, 797 So. 2d 888, 891 (¶8) (Miss. 2001). The applicant for disability income bears the burden of proving that she is actually disabled. *Dishmon*, 797 So. 2d at 893 (¶15). There is a rebuttable presumption in favor of a PERS ruling. *Brinston v. Pub. Emps. Ret. Sys.*, 706 So. 2d 258, 261 (¶6) (Miss. Ct. App. 1998).

## DISCUSSION

### I.    Substantial Evidence

¶13. Roberts claims the Board's decision is not supported by substantial evidence. Specifically, Roberts argues that the evidence indicates she was disabled as a result of her on-the-job injury on January 17, 2001. According to Mississippi Code Annotated section 25-11-114(6) (Rev. 2010),

> Regardless of the number of years of creditable service, upon the application of a member or employer, any active member who becomes disabled as a direct result of an accident or traumatic event resulting in a physical injury occurring in the line of performance of duty, provided that the medical board or other designated governmental agency after a medical examination certifies that the member is mentally or physically incapacitated for the further

6

performance of duty and the incapacity is likely to be permanent, may be retired . . . .

Mississippi Code Annotated section 25-11-113(1)(a) (Rev. 2010) defines "disability" as

the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by [PERS] that is actually offered and is within the same general territorial work area, without material reduction in compensation.

¶14. The Board, by adopting the DAC's opinion, determined that Roberts failed to show that she was incapable of performing the usual duties of her employment. The opinion noted that Roberts continued to work for over ten years in the same position after her on-the-job injury with minimal restrictions. The Board noted that Roberts's employer had accommodated her by no longer requiring her to do many of the physical and hands-on jobs she had done earlier in her career. Her employer also allowed her to change positions as often as needed.

¶15. The Board noted that although Roberts did suffer from chronic back and knee pain, the medical evidence did not support a finding that Roberts was disabled as a result of an on-the-job injury. One of Dr. Hernandez's clinic notes, dated November 20, 2009, states he believed Roberts was "disabled due to her chronic pain." That is the only mention of disability in the record. And in his Form 7, Dr. Hernandez did not indicate Roberts was disabled. In fact, the phrase "not applicable" was written under "list any impairments," and "improvement" was written under "prognosis for recovery, improvement and/or deterioration." No other doctor found Roberts was disabled as a result of her on-the-job

7

injury. Furthermore, Dr. Collipp determined that Roberts's condition was degenerative and not caused by her on-the-job injury. And Dr. Blanchard determined Roberts's chronic pain was caused by "significant degenerative changes on the right side." As a result, we find the Board's decision was supported by substantial evidence. This issue is without merit.

## II. Medical Records

¶16. Roberts argues that the Board's decision should be reversed because it did not obtain Dr. Bernardo's records. Roberts contends that because Dr. Collipp suggested in his first IME of Roberts on March 23, 2010, that Dr. Bernardo's records might be helpful, the DAC should have postponed the hearing and obtained these medical records. PERS argues that this IME report is not applicable since it was not obtained in conjunction with Roberts's current disability claim. Regardless, clinic notes from Dr. Blanchard and Dr. Hernandez state that Dr. Bernardo did not recommend surgery, only more physical therapy.

¶17. Roberts cites to Mississippi Code Annotated section 25-11-120(1) (Rev. 2010), which states that "the hearing officer shall have the authority to defer a decision in order to request a medical evaluation or test or additional existing medical records not previously furnished by the claimant." However, Roberts only raised this issue for the first time when she appealed the Board's decision to the circuit court. Furthermore, Roberts did not list Dr. Bernardo on her PERS medical-information form as one of the physicians who had treated her within the last five years. And Roberts did not mention Dr. Bernardo during her testimony before the DAC. This issue is without merit.

¶18. **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE**

8

**ASSESSED TO THE APPELLANT.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND GREENLEE, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., NOT PARTICIPATING.**